law in selling liquor to be drunk on the premises without a license or liquor tax certificate authorizing such sale. In Re Lyman, 160 N. Y. 96, 54 N. E. 577, the court of appeals has held that a liquor tax certificate can be forfeited for a violation of law by the holder only upon a conviction for such offense, and not in a summary investigation before a justice of this court or a magistrate. It follows that this proceeding cannot be maintained.

The order appealed from should be affirmed, with $10 costs and disbursements.

---

HACKETT v. SUPREME COUNCIL CATHOLIC BENEV. LEGION.

(Supreme Court, Appellate Division, Second Department. November 21, 1899.)

1. LIFE INSURANCE—MISREPRESENTATION—FORMER REJECTION.

The fact that insurer did not introduce its medical examiner to rebut testimony that insured did not answer a question as to former rejection is not fatal to a verdict finding, in effect, that he did answer the question; the presumption that he read the application, in which his negative answer appeared, before signing, being sufficient to support the verdict.

2. SAME.

To show that a misrepresentation as to former rejection was immaterial because it could not mislead the insurer, one suing on a life policy must show that the insurer knew of such former rejection.

3. SAME—ESTOPPEL.

The fact that a record of previous rejections is kept does not estop the insurer to take advantage of the misrepresentation, its contents or the former rejection of applicant not being known to the officers from whom the insurance was obtained.

Appeal from trial term, Kings county.

Action by Annie L. Hackett against the Supreme Council Catholic Benevolent Legion. There was a judgment for defendant, and plaintiff appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Raphael J. Moses, for appellant.

John C. McGuire, for respondent.

BARTLETT, J. This suit was brought by the mother of John J. Hackett, deceased, to recover $3,000 upon a certificate of insurance issued by the Supreme Council Catholic Benevolent Legion, whereby that corporation agreed to pay out of its benefit fund to the plaintiff a sum of money not exceeding $3,000 upon the death of the insured person, on condition that he was at the time in good standing as a member of the legion. The certificate bears date March 16, 1896, and expressly provides that it is issued to John Jerry Hackett, a member of St. John the Baptist Council No. 8, Catholic Benevolent Legion, located at Brooklyn, N. Y., "upon condition that the statements are true which are contained in his application for membership and medical examination filed in the office of the supreme secretary, and made a part of this contract." The application for membership and the medical examination appear to have been made out and signed by John J. Hackett in February, 1896. Among the answers

in the medical examination which the applicant warranted to be true are the following: "Have you ever before applied for membership in the Catholic Benevolent Legion?" "No." "Or any other beneficial society or life insurance company?" "No." "Were you ever rejected?" "No." On the trial of the action it was proved that John J. Hackett had applied for membership in the Catholic Benevolent Legion in 1895, and had been rejected, because the medical examiner was of the opinion that a deceased sister of the applicant had died of phthisis, and therefore that the brother was not eligible for membership in the legion until he should attain the age of 30 years. At that time he was less than 20 years of age. The court treated the case as one of false representation, rather than breach of warranty, and it went to the jury upon the question whether the insured had obtained the certificate by means of any material misrepresentations contained in his application or medical examination. The evidence of the alleged misrepresentation in respect to the nonrejection of any previous application for insurance was furnished by the production of the application made in 1895, and by the express statement of the applicant, above his own signature, in the medical examination of 1896, to the effect that he had not previously applied for membership, or been rejected. To qualify and overcome the force of this statement, the plaintiff testified that she was present at the medical examination of 1896, which appears to have been conducted by Dr. Louis D. B. Kuhn, by whom the answers of the applicant were written down; that she heard the medical examiner ask her son whether he had ever been refused insurance in any other insurance company, and her son said "No," but that she was certain her son did not answer the question whether he had ever made any previous application to the Catholic Legion. "He made answer to other questions," the witness said, "but to that one he made no answer." The medical examiner was not called to contradict this testimony given by the mother, but the defense rested upon the written medical examination itself, bearing the signature of the insured in 1896, as sufficient proof of the representation, and upon the previous application and rejection in 1895 as sufficient proof of its falsity. The learned counsel for the appellant lays much stress upon this omission of the defendant to put the medical examiner upon the stand, but we do not see how it can fairly be regarded as fatal to the verdict. Even if the applicant did not answer the question as to any former application and rejection when put to him orally, the presumption is that he read the medical examination before he appended his signature to that document, and there the declaration that he had not been rejected distinctly appeared. The defendant might rely upon the presumption, if it saw fit so to do, without calling the doctor, who, possibly, might not have any definite recollection of what had occurred in this particular case, especially if he examined many applicants for insurance every year.

It is also suggested that the misrepresentation as to any previous rejection by the Catholic Benevolent Legion, though material, if believed and acted upon, was immaterial in this case, because it could not mislead the officers of the defendant, who would be acquainted

with the truth by the contents of their own record. There would be more force in this if both applications had been made to the same council. The first, however, was made to Madison Council, while the certificate was subsequently obtained from St. John the Baptist Council. It is true that the medical examinations were both transmitted to the medical examiner in chief, and that officer, if he kept a record of previous rejections which he had approved, would have known that the statement of the applicant in the second medical examination to the effect that he had never been rejected by the Catholic Benevolent Legion was untrue. There is no evidence, however, that such a record was kept, nor is there any proof that any of the officers of the defendant concerned in insuring John J. Hackett had any actual knowledge that a previous application of his had been rejected. We think it was necessary for the plaintiff to show that they knew that fact, in order to relieve herself from the effect of the false statement of the insured, which, if made, and made understandingly,—as the jury must have thought it was,—could only have been designed to deceive the officers of the council from which the benefit certificate was finally obtained, and thus induce the medical examiner of that council to accept a risk which the medical examiner of another council had condemned the year before for reasons which were still as good as they had been then.

The case was left to the jury under a charge to which only one exception was taken in behalf of the plaintiff. That relates to the instruction that, even if a record of rejections were kept, such fact would not estop the defendant from taking advantage of false statements that were made by the insured. As already suggested, the mere existence of such a record would not be enough to make the misrepresentation immaterial, unless the contents of the record, or the fact of the previous rejection, and consequent falsity of the applicant's present answer, were actually known to those officers or agents of the defendant from whom the insurance was obtained. There was no error on the trial. The proof leaves little doubt that the defendant's officers were really misled. The judgment should be affirmed.

Judgment and order affirmed, with costs. All concur.